Michael R. Johnson (7070)
Kamie F. Brown (8520)
Matthew M. Cannon (11265)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, UT 84145-0385
Tel:  (801) 532-1500
Fax:  (801) 531-7543
mjohnson@rqn.com
kbrown@rqn.com
mcannon@rqn.com

*Attorneys for Plaintiff Commissions Import Export, S.A.*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT, S.A.,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF UTAH, solely in its capacity as Owner Trustee of the N887BA Trust, a Utah trust; EQUATORIAL CONGO AIRLINES, S.A.; and REPUBLIC OF CONGO,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. 1:16-CV-00151-EJF<br><br>Magistrate Evelyn J. Furse |

Plaintiff Commissions Import Export, S.A., through counsel, for its complaint against Defendants Bank of Utah, solely in its capacity as the Owner Trustee of the N887BA Trust, a Utah trust, Equatorial Congo Airlines, S.A., and the Republic of Congo, alleges and states as follows:

## PARTIES

1. Plaintiff Commissions Import Export, S.A. ("**Commisimpex**" or "**Plaintiff**") is a company owned by British and American partners and has been doing business in the Republic of Congo since 1973.

2. Defendant Bank of Utah ("**BOU**" or "**Defendant**") is a Utah banking corporation with its main offices located at 2605 Washington Boulevard, Ogden, Utah 84401. BOU is sued in this action not in its individual capacity, but instead only in its capacity as the Owner Trustee of the N887BA Trust, which is a Utah trust (the "**N887BA Trust**").

3. Defendant Equatorial Congo Airlines ("**EC Air**" or "**Defendant**") is an airline company with its principal place of business in Brazzaville, Congo. EC Air has a fleet of Boeing aircraft purchased in the United States and flown, among other places, on routes between Congo and France.

4. Defendant Republic of Congo ("**Congo**" or "**Defendant**") is a foreign state within the meaning of 28 U.S.C. § 1603(a).

5. Congo owns virtually all of the stock and other ownership interests in EC Air. Further, on information and belief, Congo has provided substantial funding for EC Air's business and operations, including by providing EC Air with the funds necessary to acquire the Aircraft identified below.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1330, 1331, 1367, 1603, 1605(a)(1), (2) and (6), and 1610.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) & (f)(1) in that BOU is a Utah corporation residing in this judicial district, the situs of the N887BA Trust is in

Utah, and a substantial part of the events giving rise to the claim occurred in this judicial district and a substantial part of the property that is the subject of this action is located in this judicial district.

## GENERAL ALLEGATIONS

8. This is an action to collect, at least in part, on a long-standing, final US judgment against Congo. The judgment was obtained in the United States District Court for the District of Columbia on October 9, 2013, through recognition of a foreign arbitral award rendered in January 2013. The US judgment was properly registered in this district on May 13, 2016. Congo has refused to pay a dime on the judgment and has otherwise ignored or defied prior court orders, including without limitation by refusing to comply with standard discovery obligations.

9. The underlying arbitral award against Congo on which the US judgment is based arose out of Congo's refusal to pay amounts lawfully due on major construction projects undertaken and completed by Commisimpex in Congo, all of which were simply appropriated by Congo for the benefit of itself with no payment to Commisimpex of the amounts it was owed. As a result, Commisimpex was forced to pursue arbitration in France and then further litigation in this country (and others), while Congo went about its business producing oil, extracting minerals, and otherwise earning more than enough money to repay Commisimpex yet refusing to do so.

10. There is, of course, nothing wrong with Congo earning as much as it can from its natural and other resources and in general engaging in business and commerce on a global basis. However, Congo is not a typical or commercially normal country in that it has for decades been a plutocracy run for the benefit of a series of dictatorial rulers, currently by Denis Sassou Nguesso, who first ruled from 1979 to 1992 and now again from 1997 to the present.

11. Congo has attempted to use its courts and legal system specifically to target Commisimpex in an effort to avoid paying its lawful debts. For example, in the middle of international arbitration proceedings then pending in Paris against it, Congo directed its Social Security Administration ("**CNSS**") to lodge fraudulent and baseless liquidation proceedings against Commisimpex in its local courts. Among other things, Congo had this controlled entity file a fabricated, one-page document alleging that Commisimpex owed millions of Euros in Social payments allegedly due since 1981. Without giving Commisimpex time to reply, the Congolese courts swiftly entered orders purporting to liquidate Commisimpex and appointed three liquidators with well-known links to the government.

12. Needless to say, our own courts weren't fooled by this sham. When Congo appeared in Federal court in the District of Columbia in an effort to use the fraudulent liquidation as a means to avoid the judgment that has led to these proceedings, the Hon. Richard J. Leon refused to recognize the validity of the Congolese liquidation order, finding it to be "the result of highly questionable, and perhaps even fraudulent, proceedings." Order, *Commissions Import Export S.A. v. Republic of the Congo*, Case No. 13-713 (RJL), ECF No. 35 (D.D.C. July 6, 2015); *see also Commissions Import Export, S.A. v. Republic of the Congo, et al.*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015) (Lamberth, J.) (finding that the Congolese liquidation order "was not the product of a full and fair trial, but instead appears to have arisen from fundamentally unfair proceedings that were not likely to secure an impartial administration of justice"). The liquidation orders have also been denied recognition by the arbitration tribunal in the dispute between the parties, as well as in several proceedings before the French courts.

13. There is no more independence to Congolese companies owned by the Congolese State than there is to the courts it runs. Simply stated, companies like EC Air that are owned and

operated by Congo are run for the benefit, and under the control, of Congo's ruling elite. That is as much the case with the state-owned oil company, which has been found in other court proceedings to be nothing but an alter ego of the state (*see, e.g.*, *Kensington Int'l Ltd. v. Republic of the Congo* [2005] EWHC 2684 Queen's Bench Division (Commercial Court), (Cooke, J.) ¶ 55 (finding that national oil company SNPC "is simply part of the Congolese State and has no existence separate from the State"; *see also Kensington Int'l Ltd. v. Republic of Congo*, Case No. 03-cv-4578, 2007 WL 1032269 at *17 (S.D.N.Y. March 30, 2007) (in enforcement action recognizing English judgment, denying motion to dismiss claim that SNPC was alter ego of the Congo)), as it is with EC Air, which, as detailed herein is a corporation in form only.

14. None of this is a secret and any persons doing business with Congo have long been on notice that they are dealing with a regime that ignores contract obligations, defies court judgments and otherwise acts with impunity to defeat legitimate claims such as that of Commisimpex, whether it does so through outright theft or, as here, by diverting assets through sham corporate entities.

15. As relevant to these proceedings, virtually all the shares of Defendant EC Air are owned, either directly or indirectly, by Congo. Moreover, Congo controls EC Air's finances. Accordingly, Congo through EC Air contracted with Boeing Corporation in Seattle, Washington, to buy a new Boeing 787 Dreamliner jet. Construction of the Aircraft (defined in Paragraph 45 below) was completed by Boeing at its facilities in Washington and then flown to California, where it is currently stored in Victorville, California, under the nominal title of N887BA Trust, for further transportation to Europe where it is intended to be outfitted for service.

16. Commisimpex now seeks to execute on Congo/EC Air's beneficial ownership interests in the Aircraft in satisfaction of the judgment. This action has been filed in this district

due to the location of Owner Trustee BOU, the Utah situs of the N887BA Trust, and because of this Court's jurisdiction over parties to the Trust Agreement and other agreements executed between and/or among Congo, BOU and EC Air.

17. The relevance of EC Air's lack of corporate independence to this proceeding is that the money to buy the Aircraft came straight from Congo itself. Why? Because EC Air is insolvent – it has not had the money to buy a new plane for some time and the only way Boeing would agree to the sale was if Congo itself guaranteed the payment. And along the way, as payments became due, Congo simply funded the otherwise bankrupt EC Air to make the payments.

18. There are other aspects to the transaction outlined below, but we provide this introduction to inform the Court that this is no ordinary business transaction and no deference is owed to the bare corporate formalities. Rather, the parties to the transaction have used a sham company – EC Air – as a vehicle to siphon off cash from Congo that *should have been* used to pay a lawful US judgment but is instead being used to prop up an insolvent airline owned and run for the country's benefit. Whether this scheme is described as a form of bankruptcy/insolvency fraud, or as the state itself operating through an alter ego to disadvantage one of its creditors, the fact is that any assets held by BOU in trust for the use and benefit of EC Air are now fair game for Commisimpex. And that is precisely the relief we seek – an order quieting title to the same and/or transferring beneficial ownership rights in the Trust Estate (defined in Paragraph 44 below) under the N887BA Trust from EC Air/Congo to Commisimpex.

**BACKGROUND**

19. Commisimpex invested hundreds of millions of dollars in Congo over the years, performing public works and supplying various materials to the country.

20. As part of its investments and services to the country in the 1980s, Commisimpex entered into a number of contracts with the Congo.

21. Congo failed to make the required payments under those contracts. Indeed, the *only* payment made by the Congo to Commisimpex was a payment in 1987 of US $15,000,000— a payment which represented only a small percentage of what was due and owing.

22. Consequently, in 1992 Congo entered into an agreement with Commisimpex for the repayment of part of the significant debts owed to Commisimpex under the contracts (the "**1992 Agreement**").

23. The Congo then ignored its obligations under the 1992 Agreement.

**THE ARBITRATIONS AND AWARDS**

24. In 1998, Commisimpex initiated an international arbitration against Congo pursuant to the rules of the International Chamber of Commerce (the "**ICC**").

25. In December 2000, the ICC tribunal issued an award against Congo (the "**2000 Award**"), awarding Commisimpex substantial damages. Congo failed to pay the 2000 Award. Consequently, Commisimpex initiated legal proceedings all over the world in an attempt to enforce the 2000 Award.

26. On August 23, 2003, Commisimpex and Congo executed another agreement, wherein Congo agreed to pay the totality of its debt still owed to Commisimpex (the "**2003 Agreement**").

27. The Congo, however, also ignored its obligations under the 2003 Agreement.

28. Accordingly, in 2009, Commisimpex initiated ICC arbitration against Congo based on the 2003 Agreement.

29. After the matter was fully briefed, and after a hearing on the merits, the ICC tribunal issued its final award against Congo and in Commisimpex's favor in January 2013 (the "**2013 Award**").

30. The 2013 Award ordered Congo and CCA to pay Commisimpex the following:

- €222,749,598.82;
- Interest on the awarded sum at a rate of 10%, running from December 31, 2003 until the date of full payment of the awarded sums, compounded annually on December 31;
- € 1,956,425 for reimbursement a portion of the Claimant's legal expenses;
- US$ 855,000, representing a portion of the International Chamber of Commerce arbitration costs.

31. Congo has failed to pay any amount to satisfy, even partially, the 2013 Award.

**CONFIRMATION OF 2013 AWARD AND REGISTRATION OF FINAL JUDGMENT**

32. On May 15, 2013, Commisimpex filed an action in the United States District Court for the District of Columbia to confirm the 2013 Award under the New York Convention and Chapter 2 of the Federal Arbitration Act.

33. Congo failed to appear in the action, despite the confirmed receipt of all required service materials by Congo's Ministry of Foreign Affairs.

34. On September 11, 2013, the Clerk of the Court found Congo in default.

35. On September 30, 2013, the United States District Court for the District of Columbia, based upon the ICC arbitration award, entered a final judgment granting Commisimpex's Petition to Confirm an Arbitral Award and Motion for a Default Judgment.

36. Commisimpex subsequently moved to amend the judgment to include a calculation of interest that had not been included in the judgment.

37. On October 9, 2013, the United States District Court for the District of Columbia entered a final amended judgment against Congo in the amount of €567,184,160.72 and US $855,000.00 (or roughly US $630,202,544.73), plus post-award interest and costs from the date of judgment. Currently, the amount of the judgment in US dollars is approximately $815,978,611.00 with further amounts accruing thereon (the "**Final Judgment**").

38. The Final Judgment is final, valid, and currently remains unsatisfied.

39. The Final Judgment remains unsatisfied despite decades-long attempts by Commisimpex to recover funds and assets from Congo in judicial enforcement proceedings throughout the world.

40. On May 13, 2016, the Final Judgment was registered with the United States District Court for the District of Utah in accordance with 28 U.S.C. § 1963, which registration opened case no. 2:16-cv-404 and was assigned to the Honorable Bruce Jenkins.

41. The Final Judgment was registered in the Utah District Court because Congo owns assets and has other interests that are found in this District.

### CONGO'S ASSETS AND INTERESTS IN THIS DISTRICT

42. Commisimpex has recently learned of a Trust Agreement entered into on August 31, 2015, between EC Air and BOU. The Trust Agreement (the "**Trust Agreement**") created a Utah trust entitled the N887BA Trust. EC Air is the purported Trustor and BOU is the Owner Trustee under the Trust Agreement.

43. Section 8.06 of the Trust Agreement provides that the "Trust has been accepted by Owner Trustee and will be administered in the State of Utah. The validity, construction and enforcement of this Trust Agreement shall be governed by the laws of the State of Utah without giving effect to principles of conflict of law."

44. The Trust Agreement defines the "Trust Estate" as:

> all estate, right, title and interest of Owner Trustee in and to the Aircraft, the Lease, the Warranty Bill of Sale and the FAA Bill of Sale, including, without limitation, all amounts of the rentals under any Lease, insurance proceeds (other than insurance proceeds payable to or for the benefit of Owner Trustee, for its own account or in its individual capacity, or Trustor), and requisition, indemnity or other payments or any kind for or with respect to the Aircraft, (other than amounts owing to Owner Trustee, for its own account or in its individual capacity, Trustor or any Lessee of the Aircraft).

45. Pursuant to the Trust Agreement, BOU, as Owner Trustee under the N887BA Trust, is the legal owner of a certain Boeing 787-8 Dreamliner, Serial Number 37306, FAA Registration No. N887BA, including two Rolls Royce Trent 1000 engines, Serial Nos. 10312 and 10293 (collectively the "**Aircraft**").

46. The N887BA Trust can be cancelled or terminated at the election of EC Air as the Trustor.

47. BOU, as Owner Trustee, purchased the Aircraft from the manufacturer, The Boeing Company, a United States company, on September 18, 2015.

48. EC Air is the purported Trustor of the N887BA Trust, while BOU holds legal title to the Aircraft in trust for the use and benefit of EC Air. In other words, EC Air (and in reality Congo, as explained below) holds the equitable and beneficial ownership interest in the Aircraft.

49. The N887BA Trust was formed according to the Federal Aviation Administration (the "**FAA**") regulations which allow a United States citizen to obtain FAA registration of an aircraft owned by a non-U.S. citizen. EC Air, as a non-U.S. citizen, is the purported beneficial owner of the Aircraft which is held in trust by BOU, as Owner Trustee for the sole purpose of effecting registration of the Aircraft with the FAA and holding legal title thereto.

50. Upon information and belief, the Aircraft is currently stored at a facility in Victorville, California, and EC Air has stated its intent to remove the Aircraft from the United States to a facility in Hamburg, Germany, for the purpose of completing build out of the Aircraft for commercial service later in 2016.

51. Section 5.01 of the Trust Agreement provides:

> Owner Trustee shall make all distributions to Trustor under this Trust Agreement and any Lease promptly upon the receipt of proceeds available for distribution, but shall not be obligated to make any distributions until the funds therefor have been received by Owner Trustee. All distributions to Trustor hereunder shall be made to such account and in such a manner as Trustor shall from time to time direct in writing.

52. Section 4.02 of the Trust Agreement provides: "Trustor hereby assigns to Owner Trustee any and all warranties and indemnities of, and other claims against any supplier relating to the Aircraft." In other words, EC Air assigned to BOU, among other things, any claims/choses in action against suppliers that relate to the Aircraft.

**RELATIONSHIP BETWEEN EC AIR AND CONGO**

53. Through the case currently pending before Judge Jenkins, Case No. 2:16-cv-404, Commisimpex has taken steps to investigate, among other things, the relationship between Congo and EC Air, as well as Congo's interests and assets in the N887BA Trust, including the Trust Estate, under the Trust Agreement, which includes among other things the Aircraft.

54. Discovery to date, while difficult to obtain because of some of the parties involved, has revealed that Congo and EC Air have a unity of relationship, structure and interest such that any rights, assets, and interests held by EC Air in the N887BA Trust, including the Trust Estate, under the Trust Agreement are, in fact, the rights, assets, and interests of Congo.

55. For one thing, EC Air is insolvent. Its liabilities exceed its assets and it is unable to pay its debts as they come due in the ordinary course. Also, Congo's money, not EC Air's money, is the money that was used to pay Boeing.

56. Beyond that, Congo is virtually the sole shareholder of EC Air, dominates and controls its actions, and has been propping it up financially rather than letting it slide into bankruptcy and likely liquidation, as would occur in the case of an ordinary airline in similar financial distress.

57. The original founders of EC Air were Jean Jacques Bouya and Emile Ouosso, who are government officials of Congo.

58. All material decisions about EC Air are made by its Board Members, who themselves are top government officials of Congo, including:

- Transport Advisor to President Denis Sassou Nguesso;
- Civil Aviation Advisor to President Denis Sassou Nguesso;
- Director of Cabinet – Administrative and Legal Advisor to Minister of Economy;
- Director of the oil delivery Port of Pointe-Noire.

59. Directly and through a loan obtained from RPK Aircraft Investments, LLC ("**RPK**") and guaranteed by Congo, Congo provided essentially all of the funds required to procure the assets of the N887BA Trust, including, without limitation, the Aircraft. In other words, Congo, not the shell and insolvent company EC Air, bought the Aircraft with Congo's funds and the proceeds of a loan from RPK.

60. As stated above, in connection with the purchase of the Aircraft, Congo executed a Guarantee Agreement (the "**Guaranty**"), wherein Congo guaranteed the obligations of EC Air

and BOU, as borrower, under the loan agreement and related promissory note for the purchase of the Aircraft.

61. Congo expressly admitted in the Guaranty that its activities concerning the Aircraft and the N887BA Trust were purely commercial in nature. Accordingly, it lacks any immunity with respect to such activities and, in all events, expressly waived any such immunity with respect to any proceedings arising out of or relating to the Trust Agreement, the Guaranty, and other operative documents.

62. The bottom line is that EC Air is Congo and any of its property or other rights are Congo's, whether held for EC Air/Congo in trust or not.

63. Accordingly, this Court, having jurisdiction over BOU, the N887BA Trust, the Trust Estate and all relevant parties, has judicial power to declare that EC Air/Congo's interests in the Trust Estate, including the Aircraft, under the N887BA Trust are forfeit in favor of Commisimpex towards satisfaction of its judgment.

**FIRST CLAIM FOR RELIEF**
**(Utah Uniform Trust Code – Utah Code Ann. § 75-7-705)**

64. Commisimpex incorporates the allegations set forth above as if fully set forth herein.

65. Under Utah law, "the property of a revocable trust is subject to the claims of the settlor's creditors." Utah Code Ann. § 75-7-705.

66. The N887BA Trust is a revocable trust.

67. EC Air is the purported settlor under the Trust Agreement and the beneficiary of the Trust Estate under the N887BA Trust.

68. Commisimpex is a creditor of Congo pursuant to the Final Judgment.

69. EC Air is the alter ego of Congo and the interests of EC Air are otherwise so unified with the interests of Congo such that the property and assets of EC Air that BOU is holding in trust for the use and benefit of EC Air are subject to execution of the Final Judgment. In short, Congo should be deemed the true settlor under, and beneficiary of, the N887BA Trust.

70. Accordingly, Commisimpex is entitled to a judgment from this Court finding that the property and assets under the Trust Agreement are beneficially owned by Congo and that, because the N887BA Trust is revocable, Commisimpex may enforce and collect the Final Judgment from those assets.

## SECOND CLAIM FOR RELIEF
**(Declaratory Judgment – Quiet Title)**

71. Commisimpex incorporates the allegations set forth above as if fully set forth herein.

72. Under Utah Code Ann. § 78B-6-1301, Commisimpex is entitled to have its and Defendants' adverse rights, interests, and claims in the Trust Estate determined by this Court.

73. Commisimpex is entitled to an ownership, lien, charging, or other cognizable interest in the Trust Estate.

74. Defendants, on information and belief, assert rights to and an interest in the Trust Estate for themselves and for others.

75. Commisimpex requests that any interest of EC Air and Congo in the Trust Estate be quieted in Commisimpex's favor.

76. Commisimpex requests a judgment declaring all of EC Air and Congo's interests in the Trust Estate are forfeited and quieted in Commisimpex.

### THIRD CLAIM FOR RELIEF
(Writ of Execution)

77. Commisimpex incorporates the allegations set forth above as if fully set forth herein.

78. Under Utah R. Civ. P. 64E, "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."

79. The definition of "defendant" includes "the party against whom a claim is filed *or* against whom judgment has been entered." Utah R. Civ. P. 64.

80. Insofar as the Trust Estate is in the possession or under the control of BOU and/or EC Air/Congo, Commisimpex is entitled to an order requiring delivery of Congo's interests in the Trust Estate and under the Trust Agreement to Commisimpex.

81. EC Air is the alter ego of Congo and the interests of EC Air are otherwise so unified with the interests of Congo such that the property and assets of EC Air that BOU is holding in trust for the use and benefit of EC Air are subject to execution of the Final Judgment.

82. Accordingly, Commisimpex is entitled to a judgment from this Court for the property and assets of EC Air under the Trust Agreement.

### FOURTH CLAIM FOR RELIEF
(Writ of Attachment)

83. Commisimpex incorporates the allegations set forth above as if fully set forth herein.

84. Under Utah law, "[a] writ of attachment is available to seize property in the possession or under the control of the defendant." Utah R. Civ. P. 64C.

85. Insofar as the Trust Estate is in the possession or under the control of BOU and/or EC Air/Congo, Commisimpex is entitled to an order requiring delivery of Congo's interests in the Trust Estate and under the Trust Agreement to Commisimpex.

86. EC Air is the alter ego of Congo and the interests of EC Air are otherwise so unified with the interests of Congo such that the property and assets of EC Air are subject to execution of the Final Judgment.

87. Accordingly, Commisimpex is entitled to a judgment from this Court for the property and assets of EC Air that are held in trust by BOU under the Trust Agreement for the use and benefit of EC Air.

## FIFTH CLAIM FOR RELIEF
### (Declaratory Judgment)

88. Commisimpex incorporates the allegations set forth above as if fully set forth herein.

89. There presently exists an actual and continuing controversy between Commisimpex, on the one hand, and Defendants, on the other hand, concerning whether the interests of EC Air and Congo are so unified as to make their interest the same.

90. There presently exists an actual and continuing controversy between Commisimpex, on the one hand, and Defendants, on the other hand, concerning the right to assets under the Trust Agreement, including, whether Commisimpex is entitled to possession, control, and/or execution of EC Air's assets under the Trust Agreement.

91. Commisimpex is entitled to a declaratory judgment from this Court that the interests of EC Air and Congo in the Trust Estate are the same such that the Trust Estate is subject to execution by Commisimpex pursuant to the Final Judgment.

## SIXTH CLAIM FOR RELIEF
**(Declaratory Judgment of Resulting Trust)**

92. Commisimpex incorporates the allegations set forth above as if fully set forth herein.

93. Utah has adopted Section 440 of the Restatement (Second) of Trusts.

94. Under Section 440 of the Restatement (Second) of Trusts, a resulting trust is presumed to arise "where a transfer of property is made to one person and the purchase price is paid by another."

95. Here, the beneficial interest in the Trust Estate was transferred to EC Air, but Congo is the party that paid to acquire the assets, including the Aircraft, that were used to create the Trust Estate.

96. The Court should (a) determine the amount of all funds or other property transferred or delivered by Congo to acquire the assets that constitute the Trust Estate, and (b) declare that Congo has a resulting trust in those assets to the extent of the value of all money or property so transferred.

97. After making such findings, the Court should then quiet title in Congo's interest in the Trust Estate in the name of Commisimpex.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff Commissions Import Export, S.A. prays for judgment and declaratory relief against defendants Bank of Utah, Equatorial Congo Airlines, S.A., and Republic of Congo as follows:

A. <u>On Its First Claim for Relief:</u> For a Judgment that the property and assets of EC Air that BOU is holding in trust under the Trust Agreement for the use and benefit of EC Air are subject to execution of the Final Judgment.

B. <u>On Its Second Claim for Relief:</u> For a Declaratory Judgment that all of EC Air and Congo's interests in the Trust Estate are forfeited and quieted in Commisimpex.

C. <u>On Its Third Claim for Relief:</u> For a Judgment that the property and assets of EC Air in the Trust Estate under the Trust Agreement are subject to execution of the Final Judgment.

D. <u>On Its Fourth Claim for Relief:</u> For a Judgment that the property and assets of EC Air in the Trust Estate under the Trust Agreement are subject to execution of the Final Judgment.

E. <u>On Its Fifth Claim for Relief:</u> For a Declaratory Judgment from this Court that the interests of EC Air and Congo in the Trust Estate are the same such that the Trust Estate is subject to execution by Commisimpex pursuant to the Final Judgment.

F. <u>On its Sixth Claim for Relief:</u> For a Declaratory Judgment from this Court (i) that Congo has a resulting trust in the Trust Estate to the extent of the value of all money or property transferred to acquire or obtain those assets that comprise the Trust Estate, and (ii) quieting title to all assets held by Congo in the resulting trust in the name of Commisimpex.

G. For attorneys' fees and costs of suit, to the extent authorized or allowed by law; and,

H. For such other and further relief as the Court determines just and proper.

DATED this 18th day of October 2016.

                    RAY QUINNEY & NEBEKER P.C.

                    /s/ Matthew M. Cannon
                    Michael R. Johnson
                    Kamie F. Brown
                    Matthew M. Cannon

                    *Attorneys for Plaintiff Commissions Import Export, S.A.*