Edwin C. Barnes (Utah Bar No. 0217)
James W. Anderson (Utah Bar No. 9829)
Aaron D. Lebenta (Utah Bar No. 10180)
CLYDE, SNOW & SESSIONS, P.C.
One Utah Center, 13th Floor
201 South Main Street
Salt Lake City, Utah  84111
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
jwa@clydesnow.com

Attorneys for Defendant
BANK OF UTAH, sued solely in its capacity
as Owner Trustee of the N887BA Trust

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| COMMISSIONS IMPORT EXPORT S.A.,<br><br>     Plaintiff,<br><br>v.<br><br>BANK OF UTAH, solely in its capacity as Owner Trustee of the N887BA Trust; EQUATORIAL CONGO AIRLINES, S.A.; and REPUBLIC OF CONGO,<br><br>     Defendants. | BANK OF UTAH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(b)(1) <u>AND</u> MEMORANDUM IN SUPPORT OF MOTION<br><br>**\*REDACTED – NONCONFIDENTIAL\***<br><br>**(Sealed document filed Jan. 13, 2017; Docket No. 39)**<br><br>Case No. 1:16-CV-00151-BSJ<br>(Judge Bruce S. Jenkins) |

# TABLE OF CONTENTS

Page

MOTION...................................................................................................................... 1

    Relief Requested ................................................................................................... 1

    Grounds for Relief ............................................................................................... 1

MEMORANDUM ....................................................................................................... 1

    Introduction.......................................................................................................... 1

    Factual Allegations ............................................................................................. 7

    Argument ............................................................................................................ 11

        A.    The Court Should Dismiss The Complaint Because Those Allegations Plaintiff Has Properly Pleaded Assert Only Facts Consistent With Lawful Commercial Conduct.......................................... 11

        B.    Plaintiff Has Pleaded Insufficient Facts To State A Plausible Claim That ECAir Is Not A "Separate Juridical Entity" Under The FSIA ......... 16

            1.    Plaintiff Has Not Alleged A Plausible Alter Ego Claim Under *Bancec*.................................................................................. 16

            2.    This Court Should Also Align With The California District Court's And The French Supreme Court's Persuasive No-Alter Ego Findings ...................................................................... 22

        C.    The Pleaded Facts Also Fail To State A Plausible Alter Ego Claim Under Utah Law.................................................................................... 24

        D.    █████████████████████████ Even If True, Is Consistent With Non-Alter Ego Conduct; But If The Court Determines Otherwise, It May Consider External Evidence Proving ███████ █████ And Then Dismiss The First Amended Complaint.................. 27

        E.    The Aircraft And Its Trust Are Immune From Execution Under The FSIA Because The Aircraft Is Not "Being Used For A Commercial Activity In The United States" ............................................ 29

            1.    The Aircraft's Inactive Status Immunizes It And The Trust From Execution.......................................................................... 30

            2.    Plaintiff Cannot Plead Around FSIA Immunity .......................... 31

F. The Aircraft Is Not Executable As The Product Of "Fraudulent Transfers"................................................................................................ 33

G. Demands For Remedies Are Not Causes Of Action And Should Be Dismissed ................................................................................................ 35

H. Plaintiff Lacks Standing To Allege Unjust Enrichment Based On The Republic's Investment Of Congo Taxpayers' Funds In ECAir......... 35

CONCLUSION.............................................................................................................. 36

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.*,
   475 F.3d 1080 (9th Cir. 2007) ...................................................................................31, 32

*Alberto v. Diversified Group, Inc.*,
   55 F.3d 201 (5th Cir. 1995) ...................................................................................14

*Albright v. Attorney's Title Insurance Fund*,
   504 F. Supp. 2d 1187 (D. Utah 2007)..........................................................................13, 25

*Amidax Trading Group v. SWIFT SCRL*,
   671 F.3d 140 (2d Cir. 2011)...................................................................................28

*Arch Trading Corp. v. Republic of Ecuador*,
   839 F.3d 193 (2d Cir. 2016)...................................................................................31

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................11, 13, 15

*Aurelius Capital Partners, L.P. v. Republic of Argentina*,
   2010 Wl 2925072 (S.D.N.Y. July 23, 2010) .........................................................................31

*Aurelius Capital Partners, L.P. v. Republic of Argentina*,
   584 F.3d 120 (2d Cir. 2009)...................................................................................31, 32

*Banco Nacional de Cuba v. Sabbatino*,
   376 U.S. 398 (1964)...................................................................................12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................11, 16

*Brady v. UBS Financial Services, Inc.*,
   538 F.3d 1319 (10th Cir. 2008) .........................................................................15

*Capener v. Napolitano*,
   2012 WL 1952199 (D. Utah May 30, 2012)..........................................................................35

*Chukwu v. Air France*,
   218 F. Supp. 2d 979, 983 (N.D. Ill. 2002) .........................................................................13

*Colella v. Republic of Argentina*,
   2017 WL 1545204 (N.D. Cal. May 29, 2007)...............................................................30, 32

iii

*Commissions Import Export S.A. v. Republic of the Congo*,
   2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012).........................................................15

*Commissions Import Export, S.A. v. Republic of the Congo*,
   No. CV-16-00656-GHK (C.D. Cal. Apr. 21, 2016) ....................................4, 22, 30

*Connecticut Bank of Commerce v. Republic of the Congo*,
   309 F.3d 240 (5th Cir. 2002) ......................................................................31, 32

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ...........................................................................28

*County of Santa Fe v. Public Service Co. of New Mexico*,
   311 F.3d 1031 (10th Cir. 2002) ..........................................................................28

Cour de Cassation Ruling No. 1403 F-D (Dec. 7, 2016)...........................................22

*D'Elia v. Rice Development, Inc.*,
   2006 UT App 416, 147 P.3d 515 (2006) .............................................................26

*De Letelier v. Republic of Chile*,
   748 F.2d 790, 793-95 (2d Cir. 1984) .............................................................13, 21

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003).....................................................................................16, 17

*Eastern Airlines, Inc. v. Floyd*,
   499 U.S. 530 (1991)...........................................................................................22

*EM Ltd. v. Banco Central de la República Argentina*,
   800 F.3d 78 (2d Cir. 2013)...........................................................................19, 20

*EM Ltd. v. Republic of Argentina*,
   473 F.3d 463 (2d Cir. 2007)....................................................................17, 31, 32

*Export-Import Bank for the Republic of China v. Grenada*,
   768 F.3d 75 (2d Cir. 2014)..........................................................................31, 32

*First National City Bank v. Banco Para El Commercio Exterior de Cuba*,
   462 U.S. 611 (1983)................................................................................. *passim*

*Frank v. Commonwealth of Antigua and Barbuda*,
   842 F.3d 362 (5th Cir. 2016) .............................................................................33

*Gulf States Steel, Inc. v. Lipton*,
   765 F.Supp. 696 (N.D. Ala. 1990).....................................................................35

*Hansen v. PT Bank Negara Indonesia (Persero)*,
   706 F.3d 1244 (10th Cir. 2013) ..........................................................................16

iv

*Hercaire International, Inc. v. Argentina*, 821 F.2d 559, 565 (11th Cir. 1987) ...............13, 17, 21

*Hester v. Federal Republic of Nigeria*,
    879 F.2d 170 (5th Cir. 1989) ......................................................................................20, 21

*Hodge v. Ocwen Loan Servicing*,
    2012 WL 1434887 (D. Utah Apr. 25, 2012)........................................................................35

*Hogan v. Winder*,
    762 F.3d 1096 (10th Cir. 2014) .........................................................................................11

*Howell Petroleum Corp. v. Samson Res. Co.*,
    903 F.2d 778 (10th Cir. 1990) ...........................................................................................34

*Human Rights in China v. Bank of China*,
    2003 WL 22170648 (S.D.N.Y. Sept. 18, 2003).................................................................28

*In re McCauley*,
    549 B.R. 400 (Bankr. D. Utah 2016) .................................................................................35

*In re Vitamin C Antitrust Litigation*,
    837 F.3d 175 (2d Cir. 2016)...............................................................................................12

*In re Vivendi Universal, S.A.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .........................................................................................22

*Jones & Trevor Marketing, Inc. v. Lowry*,
    2012 UT 39, 284 P.3d 630 ...............................................................................1, 22, 24, 25

*Jones v. Mackey Price Thompson & Ostler*,
    2015 UT 60. 355 P.3d 1000 ...............................................................................................34

*Kansas Penn Gaming, LLC v. Collins*,
    656 F.3d 1210 (10th Cir. 2011) .........................................................................................11

*Khalik v. United Air Lines*,
    671 F.3d 1188 (10th Cir. 2012) .........................................................................................13

*Kirkham v. Société Air France*,
    429 F.3d 288 (D.C. Cir. 2005)...........................................................................................29

*Lebahn v. National Farmers Union Uniform Pension Plan*,
    828 F.3d 1180 (10th Cir. 2016) .........................................................................................11

*Lima Delta Co. v. Global Aerospace, Inc.*,
    752 S.E.2d 135 (Ga. App. 2013)..........................................................................................2

*Lodges at Bear Hollow Condominium Association, Inc. v. Bear Hollow Restoration, LLC,*
  2015 UT App 6, 344 P.3d 145 ..............................................................25, 26, 27

*Lowell Staats Mining Co. v. Pioneer Uruvan, Inc.,*
  878 F.2d 1259 (10th Cir. 1989) .......................................................15, 25, 26, 27

*Luckett v. Bethlehem Steel,*
  618 F.2d 1373 (10th Cir. 1980) ..............................................................25, 27

*Morrison v. National Australia Bank Ltd.,*
  561 U.S. 247 (2010)...................................................................................36

*NLRB v. Greater Kansas City Roofing,*
  2 F.3d 1047 (10th Cir. 1993) ........................................................................25

*NML Capital, Ltd. v. Space Exploration Technologies Corp.,*
  2015 WL 1334291 (C.D. Cal. Mar. 6, 2015).......................................................32

*NML Capital, Ltd. v. Spaceport Systems International, L.P.,*
  788 F. Supp. 2d 1111 (C.D. Cal. 2011) ............................................................32

*Philko Aviation v. Shacket,*
  462 U.S. 406 (1983)......................................................................................9

*RMA Ventures California v. SunAmerica Life Insurance Co.,*
  576 F.3d 1070 (10th Cir. 2009) ....................................................................36

*Robbins v. Oklahoma ex rel. Dept. of Human Services,*
  519 F.3d 1242 (10th Cir. 2008) ....................................................................16

*Romstad v. City of Colorado Springs,*
  650 Fed. Appx. 576 (10th Cir. 2016)..............................................................35

*RTP LLC v. Orix Real Estate Capital, Inc.,*
  827 F.3d 689 (7th Cir. 2016) ......................................................................15

*Scott v. Harris,*
  550 U.S. 372 2007).....................................................................................28

*Sirobokova v. CSA Czech Airlines, Inc.,*
  335 F. Supp. 2d 989, 991 (D. Minn. 2004).......................................................13

*Springfield Finance & Mortgage Co. v. Lilley,*
  2016 WL 4275642 (D. Utah Aug. 12, 2016).....................................................11

*Territorial Savings & Loan v. Baird,*
  781 P.2d 452 (Utah App. 1989).....................................................................33

*Transamerica Leasing, Inc. v. La Republica de Venezuela,*
200 F.3d 843 (D.C. Cir. 2000) ...................................................................20

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,*
472 F.3d 702 (10th Cir. 2006) ..................................................................24

*United States v. Bestfoods,*
524 U.S. 51 (1998)....................................................................................25

*United States v. Elgin, Joliet & Eastern Railway,*
298 U.S. 492 (1936)..................................................................................25

*Walters v. Industrial and Community Bank of China, Ltd.,*
651 F.3d 280 (2d Cir. 2011).................................................................29, 32

*World Wide Minerals, Ltd. v. Republic of Kazakhstan,*
296 F.3d 1154 (D.C. Cir. 2002) ...............................................................12

*Yavuz v. 61 MM, Ltd.,*
576 F.3d 1166 (10th Cir. 2009) ................................................................34

**Statutes**

28 U.S.C. § 1603(a) .........................................................................................7

28 U.S.C. § 1609...........................................................................................30

28 U.S.C. § 1610................................................................................... *passim*

28 U.S.C. § 1611...........................................................................................30

Utah Code Ann. § 26-6-5...............................................................................34

Utah Code Ann. § 25-6-9...............................................................................34

**Rules**

Fed. R. Civ. Proc. 12(b)(1) .......................................................................1, 29

Fed. R. Civ. Proc. 12(b)(6) .......................................................................1, 11

**Other Authorities**

*africabusiness.com/2016/06/01/africa-intra-regional-air-transport* at notes 13-16 ...................14

*centreforaviation.com/analysis/africas-ailing-national-airlines-survive-on-usd25-
billion-of-government-subsidy-not-sound-policy-131859* ........................................14

*iata.org/whatwedo/Documents/economics/Economic-Performance-of-the-Airline-Industry-mid-year-2015-forecast-slides,* at slide 25 ............................................................... 14

*iata.org/whatwedo/Documents/economics/IATA-Economic-Performance-of-the-Industry-mid-year-2016-report* at 6 .................................................................... 14

*icao.int/sustainability/Documents/PrivatizedAirlines* (listing airlines and government share ownership in each) ................................................................. 13

Morgan Winsor, *Republic of Congo Presidential Election 2016: Guide to Candidates, Issues, Rules and Results*, International Business Times, March 19, 2016 ................................................................................................................ 12

## MOTION

### Relief Requested

Defendant Bank of Utah, sued solely in its capacity as Owner Trustee of the N887BA Trust ("the Trust"), through its counsel, moves the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) and this Court's Local Rule 7-1, for an order dismissing the Complaint because it fails to state a claim on which relief may be granted.

### Grounds for Relief

Bank of Utah moves to dismiss the Complaint under Rule 12(b)(6) because Plaintiff's claims depend on the legal question of whether Defendant Republic of Congo ("the Republic") is the alter ego of Defendant Equatorial Congo Airlines, S.A. ("ECAir").  As a matter of federal law as set forth in *First National City Bank v. Banco Para El Commercio Exterior de Cuba*, 462 U.S. 611 (1983), and related cases, and also as a matter of Utah law as set forth in *Jones & Trevor Marketing, Inc. v. Lowry*, 2012 UT 39, 284 P.3d 630, and related cases, the allegations of fact in the First Amended Complaint, even if taken as true, fail to state a claim of alter ego that is plausible on its face.

Alternatively, Bank of Utah moves to dismiss the Complaint under Rule 12(b)(1) because, even if Plaintiff could prove that the Aircraft constituting the Trust estate is the property of the Republic of Congo, the Aircraft and its Trust are immune from execution under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1610(a).  The Aircraft is not being, and never has been, "used for a commercial activity in the United States."

## MEMORANDUM

### Introduction

Even though the First Amended Complaint of Plaintiff Commissions Import Export S.A. is double the length of the original Complaint and adds another four claims, it does nothing to

resolve the fatal legal flaws Defendant Bank of Utah identified in its first motion to dismiss.  The new allegations are cumulative, irrelevant or incredible.

Plaintiff, a Congolese corporation, won a foreign arbitration award against Defendant Republic of Congo for unpaid work Plaintiff did for the Republic in Congo.  Although reduced to a judgment, the award has not been satisfied.

████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

Plaintiff seeks a judgment declaring that the Republic, not ECAir, is the true trustor and beneficial owner of the Trust's assets, including the Aircraft, and, consequently, that Plaintiff may attach or execute on the Aircraft, or otherwise realize the Aircraft's value, to satisfy Plaintiff's judgment against the Republic.  Plaintiff premises each of its claims on the legal conclusion that the Republic is the Aircraft's true owner, primarily because it is ECAir's alter ego.  Plaintiff alleges four potentially legally-pertinent facts in support of its alter ego theory.

---

[1] Bank of Utah "provides aircraft 'owner trust' services, pursuant to FAA regulations that allow non-U.S. citizens to transfer legal title of an aircraft to a trustee who is citizen of the U.S. through a vehicle known as 'an aircraft owner trust.'  In addition to the trust agreement, whereby title to the aircraft is transferred, the parties also execute an operating agreement, which allows the beneficiary of the trust (the original, non-U.S. owner of the aircraft) to maintain the aircraft while the trustee holds the title and files for FAA registration of the aircraft."  *Lima Delta Co. v. Global Aerospace, Inc.*, 752 S.E.2d 135, 137 (Ga. App. 2013).

[2] Pursuant to DUCivR 5.2, confidential information is identified herein by use of brackets ({}).

Plaintiff alleges:



As explained below, even if all of these alleged facts were true (which they are not), they are insufficient to state a plausible alter ego finding.

The Court should ignore the First Amended Complaint's legal conclusions, its critiques on Congolese politics, its grievances about how the Republic has treated Plaintiff, and other conclusory inferences unrelated to ECAir or the Aircraft.  *See* Point A at pages 11-16 *infra*.

Because the First Amended Complaint makes claims against a "foreign sovereign" (the Republic) and a foreign-sovereign-owned "instrumentality" (ECAir), federal law under the Foreign Sovereign Immunities Act determines the outcome.  *See* Point B at page 16 *infra*.

In *First National City Bank v. Banco Para El Commercio Exterior de Cuba*, 462 U.S. 611 (1983), the United States Supreme Court recognized that a foreign-government-owned, foreign-government-financed, corporate entity run by a foreign-government-appointed board is presumptively a "separate juridical entity," and *not* an alter ego of the foreign government. Circuit courts of appeal have applied this presumption in commercial contexts indistinguishable from that alleged here to deny alter ego claims against foreign governments.  In the specific context of government-owned airlines, the Second and Eleventh Circuits have both held that a

foreign government's 100%-ownership-and-control over the airline is not sufficient evidence of

alter ego to support a claim by the government's judgment creditor against the airline's aircraft.

Here, the Court should likewise conclude that Plaintiff has not alleged alter ego facts to

overcome the FSIA presumption that ECAir is a "separate juridical entity," barring Plaintiff from

any claim to ECAir's rights in the Trust and its Aircraft.  *See* Point B1 at pages 16-21 *infra.*

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████ relied on in its failed action in

the Central District of California.  *See Commissions Import Export, S.A. v. Republic of the*

*Congo*, Case No. CV-16-00656-GHK at Dkt. No. 21 (C.D. Cal. April 21, 2016) ("the California

Action").  In the California Action, Chief Judge King rejected Plaintiff's alter ego allegation,

holding that Plaintiff had failed to show ECAir is not a "separate juridical entity" or that the

Republic "has an ownership interest in the Aircraft."  *Id.* at 5-6.  Nothing in this First Amended

Complaint provides any reason to second-guess that decision.  *See* Point B2 at page 22 *infra.*

A contrary conclusion on alter ego by this Court would also conflict with a December 7,

2016 ruling by the highest court in France that all-but-replicates this case.  Three Congolese

companies held unsatisfied judgments, unrelated to ECAir, from the Congolese courts against the

Republic.  The three companies domesticated their judgments in France.  They then seized an

ECAir aircraft at Paris CDG airport, asserting that the Republic was ECAir's alter ego.

Plaintiff's tactics here are a carbon copy of the stratagem attempted in France. █████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████ The Cour de Cassation, the

French equivalent of the U.S. Supreme Court, applied essentially the same alter ego law that

controls here to these facts, and held: "ECAir is acting pursuant to its own valid corporate authority and is not the Republic of Congo's alter ego."  This Court should align itself with the Cour de Cassation's conclusion.  *See* Point B2 at pages 22-24 *infra.*

While federal law determines that ECAir is a "separate juridical entity" under the FSIA, Utah's alter ego law is instructive too.  Numerous Tenth Circuit and Utah cases have held that there can be no alter ego finding on the facts alleged in the First Amended Complaint.  State law rejects an alter ego characterization ██████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ No Utah case supports Plaintiff's alter ego claim.

*See* Point C at pages 24-27 *infra.*

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Even if true (which it is not), this allegation has no legal resonance— █████████████████

████████████████████████████████████████████████████████

███████████████████████████ If, however, the Court has any doubt on this point, it should consider, consistent with Rule 12, █████████████████████████████████████████

██████████████████████████████████████████████████████ *See*

Point D at pages 27-29 *infra.*

Because the Plaintiff's allegations cannot support a legally plausible conclusion of alter ego under either federal or Utah law, the Court should dismiss the First Amended Complaint.

In the alternative, even if the Court were to decide that the First Amended Complaint may plausibly allege alter ego under FSIA or Utah law, the Court should still dismiss the claims

because the Aircraft and its Trust are immune from execution under the FSIA.  28 U.S.C.

§ 1610(a) requires that, to execute on an asset of a foreign sovereign, the judgment creditor must

demonstrate that the asset is "being used for a commercial activity in the United States."  Right

now, the Aircraft is stored, unused and inactive, at a facility in Victorville, California.  As did the

court in the California Action, this Court should hold that the Aircraft is not being used for a

commercial activity in the United States, and is immune from execution.  If it reaches the issue,

the Court should dismiss the action for this reason.  *See* Point E1 at pages 29-31 *infra*.

 The Court should also give short shrift to Plaintiff's allegation that the Republic

██████████ its sovereign immunity ████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Point E2 at pages

31-33 *infra*.

 The Court should also reject Plaintiff's attempt, floated in the final words of the First

Amended Complaint's last numbered paragraph, to allege a "fraudulent transfer" claim that may

not depend on an alter ego finding.  Not one of the eleven statutorily-defined "badges of fraud" is

present here.  And there is no allegation ████████████████████████████████████████

████████████████████████████ Plaintiff has not plausibly alleged clear and conclusive

evidence of an actual intent to defraud under Utah law.  *See* Point F at pages 33-34 *infra*.

 Finally, and alternatively, the Court should dismiss several of the alleged claims as

improperly pleaded.  The "claims" for "injunction," "declaratory judgment," "constructive trust,"

and "resulting trust" plead remedies, not claims.  *See* Point G at pages 34-35 *infra*.  Plaintiff has

no standing to state a claim for unjust enrichment that alleges ECAir benefited extraterritorially

from the Republic's ███████████████████████ *See* Point H at pages 35-36 *infra*.

In sum, Plaintiff cannot, as a matter of law, satisfy its long-outstanding judgment against the Republic by seizing the Aircraft through this action.  For any or all of these reasons, the Court should dismiss the First Amended Complaint.

### Factual Allegations[3]

Plaintiff's Unpaid Judgment Against The Republic

1.     The Republic is a "foreign state within the meaning of 28 U.S.C. § 1603(a)," the Foreign Sovereign Immunities Act.  First Amended Complaint ("FAC") at ¶ 4.

2.      *Id*. at ¶¶ 8-10, 26-28, ▮▮▮▮

3.     After a series of arbitrations before the International Chamber of Commerce starting in 1998, Plaintiff won substantial awards against the Republic, now worth over $815 million.  *Id*. at ¶¶ 31-37, 44.  The awards were upheld by the Paris Court of Appeal and the "French Court of Cassation, France's highest court in matters of private law."  *Id*. at ¶ 36.

4.     Plaintiff registered its awards in the United States District Court for the District of Columbia, the Republic defaulted, and judgment was entered for Plaintiff.  *Id*. at ¶¶ 39-44.  The judgment is unsatisfied.  *Id*. at ¶¶ 8, 38, 45.  In May 2016, Plaintiff registered its judgment in this Court.  *Id*. at ¶¶ 47-48.  Plaintiff then took "steps to investigate" and conducted discovery about the Republic's assets in the United States.  *Id*. at ¶¶ 17 n.1, 64.

Equatorial Congo Airlines

5.     ECAir "is an airline company" based in Brazzaville, Congo.  *Id*. at ¶ 3.  ECAir's

---

[3]  Because this is a Rule 12 motion, Plaintiff's factual allegations should generally be assumed as true.  In one particular respect discussed in Point D *infra*, the allegations are obviously incorrect, as many documents in Plaintiff's possession conclusively demonstrate.

"fleet of Boeing aircraft" operates "among other places, on routes between Congo and France."

*Id.* It is Congo's national airline, and was created by statute. *Id.* at ¶¶ 93, 102 ███████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████

6.      ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████

The Purchase Of The Aircraft And The Trust

7.      ECAir contracted to purchase the Aircraft from Boeing. *Id.* at ¶¶ 20, 49 ███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████

8.      In September 2015, "Bank of Utah, as Owner Trustee [of the N887BA Trust]

---

[4] If the Court should need to reach the issue, this allegation is false, and Plaintiff and its counsel know that. ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

purchased the Aircraft from the manufacturer, Boeing."  FAC at ¶ 54.  The N887BA Trust is a

non-citizen aircraft owner trust "formed according to FAA regulations."  *Id.* at ¶ 56.  Bank of

Utah "as Owner Trustee under the N887BA Trust, is the legal owner" of the Aircraft.  *Id.* at ¶ 52.

ECAir is the Trust's trustor, and holds a beneficial interest in the Trust's estate, which consists of

████████████████████████████████████████████  *Id.* at ¶¶ 49-52, 55, 67.[5]

9.  ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

10.     "The Aircraft is currently stored at a facility in Victorville, California."  *Id.* at ¶

57.  The Aircraft is not being used for a commercial activity in the United States.  *Id.*  Rather, the

"intent [is] to remove the Aircraft from the United States to a facility in Hamburg, Germany, for

the purposes of completing build out of the Aircraft for commercial service."  *Id.*

The Ten Claims Alleged In The First Amended Complaint

11.     The First Amended Complaint attempts to plead ten claims.  The first claim

alleges that, because "ECAir is the alter ego of Congo," *id.* at ¶ 118, the Republic, and not

ECAir, should be deemed to be the Trust's "true settlor" and "beneficiary," enabling Plaintiff to

execute on the Trust's estate—the Aircraft—to collect its judgment against the Republic.  *Id.* at

¶¶ 119-20.

12.     On the same theory, *id.* at ¶ 122, the second claim seeks a declaration quieting

title to the Trust estate's beneficial interest in Plaintiff.  *Id.* at ¶¶ 126-27.

---

[5] As the Aircraft's FAA-registered owner, the Trust is presumed to be the actual owner.  *See Philko Aviation v. Shacket*, 462 U.S. 406, 409-10 (1983).

13.     The third claim alleges that, because "ECAir is the alter ego of Congo," *id.* at ¶ 133, Plaintiff is entitled to a writ of execution on the Trust's estate. *Id*. at ¶¶ 133-34.

14.     Plaintiff's fourth claim relies on the same alleged factual premise of alter ego, *id.* at ¶ 137, to seek a writ of attachment on the Aircraft. *Id.* at ¶¶ 136, 138-39.

15.     Again relying on the alter ego allegations, *id.* at ¶ 140, the fifth claim seeks a declaration that Plaintiff can execute on ECAir's assets in the Trust's estate. *Id.* at ¶ 143.

16.     In its sixth claim, incorporating the previously alleged alter ego facts, *id.* at ¶ 144, Plaintiff alleges that ECAir was "unjustly enriched" by the ███████████████████ ██████████████████████ should be disgorged to Plaintiff under "principles of justice, equity and good conscience." *Id.* at ¶ 148.

17.     The seventh claim, also incorporating all previously alleged alter ego facts, *id.* at ¶ 149, ████████████████████████████████████████████████████ ████████████████████████████████████████████

18.     The eighth claim, which, once more, incorporates all previously alleged facts, *id.* at ¶ 156, seeks imposition of a resulting trust to reflect that, because ECAir is the Republic's alter ego, the Republic's ███████████████████████████████████ *Id.* at ¶¶ 158-61.

19.     The ninth claim, styled "Injunction," relies on all of the previously alleged facts. *Id*. at ¶ 162.  This claim seeks to enjoin the Trust's termination or its disposal of the Aircraft because of the "evidence demonstrating alter ego of Congo and ECAir." *Id.* at ¶¶ 165-68.

20.     The tenth and final claim also incorporates the prior alter ego allegations. *Id.* at ¶ 172.  The claim alleges that the funds the Republic provided to ECAir were "fraudulent transfers" made to "hinder, delay or defraud the Republic's creditors." *Id.* at ¶¶ 178-79.  Plaintiff

seeks to seize and sell the Aircraft, "even if the Court determines that Congo and ECAir are not

alter egos of one another." *Id.* at ¶ 180.

## Argument

### A. The Court Should Dismiss The Complaint Because Those Allegations Plaintiff Has Properly Pleaded Assert Only Facts Consistent With Lawful Commercial Conduct

A complaint cannot survive a motion to dismiss unless it pleads "enough facts to state a

claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007); *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (affirming dismissal). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Because Plaintiff has not done that here, its First Amended Complaint

should be dismissed. *See Springfield Finance & Mortgage Co. v. Lilley*, 2016 WL 4275642 at *

5 (D. Utah Aug. 12, 2016) (granting Rule 12(b)(6) motion and dismissing alter ego claim

because "allegations fall short of plausible").

It is not enough for Plaintiff to plead only "labels and conclusions" of alter ego or "a

formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Lebahn v.

National Farmers Union Uniform Pension Plan*, 828 F.3d 1180, 1183 (10th Cir. 2016)

(affirming dismissal). "Thus, in ruling on a motion to dismiss, a court should disregard all

conclusory statements of law and consider whether the remaining specific factual allegations, if

assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v.

Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (affirming dismissal). Plaintiff's assertions that

the Republic corruptly dominates economic activity in Congo, its critiques on Congolese politics,

its grievances about how the Republic has treated Plaintiff, and other conclusory inferences

unrelated to ECAir and its purchase of the Aircraft, are *not* well-pleaded facts.

For example, the Court should ignore the Complaint's allegations about a Congolese court's decision to strip Plaintiff of its Congolese corporate status for non-payment of its workers' social security taxes.  *See* FAC at ¶¶ 12-14.  That event has no relevance to ECAir's corporate status.  Plaintiff's disdain for the Congolese courts, *id.* at ¶ 15, is self-interested commentary—as the French Supreme Court decision validating ECAir as an independent corporate entity confirms, the Congolese courts have awarded substantial damages judgments against the Republic in favor of local companies.  *See* Exhibit A to Declaration of Olivier Loizon, filed concurrently, at 1-2.

Similarly, Plaintiff alleges the Republic of Congo is a "plutocracy," *see* FAC at ¶ 10, and volunteers its slant on how the Republic's democratically-elected government[6] runs the country's economy.  *Id.* at ¶¶ 11, 19.  These are partisan opinions, not well-pleaded facts.  Deference to international comity and/or the application act-of-state doctrine bar this Court from delving into the political economy of a foreign country.[7]

Further, the facts Plaintiff has pleaded here—that —are no more than the typical indicia of a lawful

---

[6]  *See, e.g.,* Morgan Winsor, *Republic of Congo Presidential Election 2016: Guide to Candidates, Issues, Rules and Results*, International Business Times, March 19, 2016.

[7]  *See, e.g., Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401 (1964) (act of state doctrine "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory."); *World Wide Minerals, Ltd. v. Republic of Kazakhstan,* 296 F.3d 1154, 1166-67 (D.C. Cir. 2002) (district court correctly dismissed claims for seized assets against foreign state's instrumentality under act-of-state doctrine); *In re Vitamin C Antitrust Litigation,* 837 F.3d 175, 190 (2d Cir. 2016) (dismissing complaint because international comity requires U.S. courts to defer to political and economic decisions of foreign governments, including Chinese government's direction to Chinese companies to fix prices).

commercial relationship between a corporate parent and its separately incorporated subsidiary. These allegations are insufficient to plead a claim that the Republic is ECAir's alter ego.  As Judge Benson of this Court has explained:  "Because virtually all corporate families involve subsidiaries controlled by the parent or majority shareholder, courts must distinguish between the type of control a parent exerts in the normal course of business from excessive control by the parent."  *Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1209 (D. Utah 2007).

For example, Plaintiff alleges that █████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████  *See* FAC at ¶¶ 18, 68-78, 103.  These alleged facts are at least equally consistent with a lawful corporate parent-subsidiary structure. ████████████████████████████████████████████████████████████████████
██████████████████████████████████████████[8]  Plaintiff must plead facts showing something more than a possibility of unlawful activity.  *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190-91 (10th Cir. 2012). "When a plaintiff pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678-79.

Similarly, Plaintiff's observations about ████████████████████████████████
████████████████████████████████████████████████████████████████



---

[8]  *See icao.int/sustainability/Documents/PrivatizedAirlines* (listing dozens of state-owned airlines and government share ownership in each); *Hercaire International, Inc. v. Argentina*, 821 F.2d 559, 565 (11th Cir. 1987) (Argentinas Aerolineas airline is 100% owned by government of Argentina); *De Letelier v. Republic of Chile*, 748 F.2d 790, 793-95 (2d Cir. 1984) (LAN-Chile airline is 100% owned by Chilean government); *Sirobokova v. CSA Czech Airlines, Inc.*, 335 F. Supp. 2d 989, 991 (D. Minn. 2004) (CSA Airlines is 91% owned by Czech Republic); *Chukwu v. Air France*, 218 F. Supp. 2d 979, 983 (N.D. Ill. 2002) (Air France has "majority of its ownership interest owned by Republic of France").

██████████ *see id.* at ¶¶ 69-74, are not evidence of corporate impropriety, but simply re-state

████████████████████████████████ in Africa.  Thus, nearly all airlines experience

operating losses and carry very large capital debts—according to the International Airline Travel

Association, in 2015, only six airlines worldwide had sufficient cash flow to cover their five-year

obligations, while the median airline's debt-load was $3 billion.[9]  In 2015, "Africa is the weakest

region, as in the past 2 years.  Losses have emerged again due to regional conflict and the impact

of low commodity prices."[10]  Although twenty-five African governments support a state-owned

national airline, "[m]any state-owned carriers in these regions have collapsed."[11] Nine African

airlines remain operative solely because their governments ██████████████████████

██████ have injected over $2.5 billion of cash support.[12] ████████████████████████

██████████████████████████████████████████████████

████████████████████████ No plausible alter ego claim can be based

on those alleged facts.

Nor is there any legal resonance to Plaintiff's allegation that ████████████████████

██████████████████████████████████████████████

██████████ *See* FAC at ¶¶ 83, 86, 107.  It is lawful and ubiquitous corporate practice for a parent

corporation to ████████████████████████████████████████

---

[9]  *See iata.org/whatwedo/Documents/economics/Economic-Performance-of-the-Airline-Industry-mid-year-2015-forecast-slides,* at slide 25.

[10]  *iata.org/whatwedo/Documents/economics/IATA-Economic-Performance-of-the-Industry-mid-year-2016-report* at 6.

[11]  *See africabusiness.com/2016/06/01/africa-intra-regional-air-transport* at notes 13-16.

[12]  *See centreforaviation.com/analysis/africas-ailing-national-airlines-survive-on-usd25-billion-of-government-subsidy-not-sound-policy-131859.*

██████████████████████████████████████ "When a plaintiff pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and

plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678-79. ████████████████████

███████████████████████████████████████████████[14]

    Plaintiff alleges that ████████████████████████████████████████████████████

████████████████████████████████████████ But no U.S. court has held that what is

alleged here reflects an alter ego or unlawful relationship, especially when, as ██████████

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See* FAC at

¶¶ 99, 103.  Many capital-intensive U.S. industries operate through the lawful legal structure of a

corporate parent providing all of the finance, but avoiding the liability, for a wholly-owned,

separately incorporated subsidiary that owns the assets and the debts and liabilities.[15]  None of

---

[13]  *See, e.g., Alberto v. Diversified Group, Inc.*, 55 F.3d 201 (5th Cir. 1995) (no alter ego finding where parent "was funneling millions of dollars of capital into the struggling company" which it wholly owned); *Lowell Staats Mining Co. v. Pioneer Uruvan, Inc.*, 878 F.2d 1259, 1263 (10th Cir. 1989) (parent's investment in uranium exploration business of series of interlocking subsidiaries is not evidence of alter ego).

[14]  █████████████████████████████████████████████████████████████████
███████████████  *See* FAC at ¶ 15.  The Court should disregard this insertion of legal argument into a pleading.  *See Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  As the New York federal district court told Plaintiff in an earlier case to enforce the judgment, the status of the Congolese oil company is irrelevant to the issues before this Court.  *See Commissions Import Export S.A. v. Republic of the Congo*, 2012 WL 1468486 at *4 (S.D.N.Y. Apr. 27, 2012).

[15]  *See, e.g., RTP LLC v. Orix Real Estate Capital, Inc.*, 827 F.3d 689, 690 (7th Cir. 2016) (office development owned by single purpose entity owned and financed by entity worth billions of dollars); *Brady v. UBS Financial Services, Inc.*, 538 F.3d 1319, 1321-22 (10th Cir. 2008) (single purpose entity issues bonds for Tulsa tower owned by another single purpose entity owned by multinational corporation); *Lowell,* 878 F.2d at 1263 ("Pioneer will not be exposed to liability for the obligations of Uruvan when Pioneer contributes funds to Uruvan for the purpose of assisting Uruvan in meeting its financial obligations and not for the purpose of perpetuating a fraud.").

these relationships are treated as pierceable alter egos or unlawful arrangements that justify the imposition of an equitable constructive or resulting trust.

When the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma ex rel. Dept. of Human Services*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570) (affirming dismissal). That is the situation here. Consequently, the Court should dismiss the First Amended Complaint.

### B. Plaintiff Has Pleaded Insufficient Facts To State A Plausible Claim That ECAir Is Not A "Separate Juridical Entity" Under The FSIA

Under controlling federal law, ECAir is presumptively a "separate juridical entity" and the Republic is presumed not to be the airline's alter ego. Plaintiff has not alleged facts that plausibly overcome this presumption. For this reason, the Court should dismiss the action.

The Foreign Sovereign Immunities Act determines the outcome here. "FSIA provides the exclusive basis for obtaining jurisdiction over claims against a foreign state or its instrumentalities in the United States." *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1248 (10th Cir. 2013). Republic of Congo is a "foreign state" subject to the FSIA. *See* FAC at ¶ 4. Because it is majority-owned by a foreign state, ECAir is an "instrumentality" of the Republic, which may be sued only under the FSIA.[16]

### 1.   Plaintiff Has Not Alleged A Plausible Alter Ego Claim Under *Bancec*

As the United States Supreme Court has recognized, "Congress clearly expressed its

---

[16] *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003) (Israeli entity whose stock is all or mostly owned by Israel is foreign instrumentality immune under FSIA); *Hansen*, 706 F.3d at 1248 (entity that is "majority-owned by the government of Indonesia, qualifies as foreign state under the FSIA, and as such, it is presumptively immune."); *Sirobokova*, 335 F. Supp. 2d at 991 (airline that is 91% owned by Czech Republic is "instrumentality" of state under FSIA).

intention that duly-created instrumentalities of a foreign state are to be accorded a presumption of independent status." *First National City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 627 (1983) ("*Bancec*"). "Separate legal personality has been described as an almost indispensable aspect of the public corporation." *Id.* at 625. Consequently, "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *Id.* at 626-27.

"The doctrine of piercing the corporate veil, however, is the rare exception, applied in the case of fraud or other exceptional circumstances. . . . The text of the FSIA gives no indication that Congress intended us to depart from the general rules regarding corporate formalities." *Dole*, 538 U.S. at 475-76.

From these principles, the federal appellate courts have adopted the further "presumption that assets of a foreign government instrumentality could not be executed upon to satisfy a judgment against a parent foreign government." *EM Ltd. v. Republic of Argentina¸* 473 F.3d 463, 477 (2d Cir. 2007) (citing numerous cases). This presumption may be "overcome only if the party seeking attachment carried its burden of demonstrating that the instrumentality's separate juridical status [is] not entitled to recognition." *Id.*; *see, e.g., Hercaire*, 821 F.2d at 565 (because judgment creditor cannot establish that 100% government-owned commercial international airline is the alter ego of parent government, judgment creditor cannot execute on airline's aircraft).

In *Bancec*, the Supreme Court addressed whether a foreign state could be held liable under the FSIA as the alter ego of its wholly-owned corporate instrumentality, and, if so, under what circumstances. The Court noted that "governments throughout the world have established separately constituted legal entities to perform a variety of tasks." 462 U.S. at 624. The Court

17

continued:

> A typical government instrumentality, if one can be said to exist, is created by an enabling statute that . . . specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law.  The instrumentality is typically established as a separate juridical entity . . . .  Except for appropriations to provide capital and to cover losses, the instrumentality is primarily responsible for its own finances.  The instrumentality is run as a distinct economic enterprise . . . .  These same features frequently prompt governments in developing countries to establish separate juridical entities as the vehicles through which to obtain the financial resources needed to make large-scale national investments.

*Id.* at 624-25.  This description fits ECAir precisely—

(i) 

The Supreme Court has developed a clear direction for a district court presented with an

instrumentality that has ECAir's corporate characteristics and relationship to the foreign state

that created it  According to the Supreme Court,

> the instrumentality's assets and liabilities must be treated as distinct from those of its sovereign to facilitate credit transactions with third parties. . . .  Freely ignoring the separate status of government instrumentalities would result in substantial uncertainty over whether an instrumentality's assets would be diverted to satisfy a claim against the sovereign . . . .  As a result, the efforts of sovereign nations to structure their governmental activities in a manner deemed necessary to promote economic development and efficient administration would surely be frustrated.  Due respect for the actions taken

> by foreign sovereigns, and for principles of comity between nations, leads us to conclude . . . that government instrumentalities established as distinct and independent from their sovereign should normally be treated as such.

*Bancec*, 462 U.S. at 625-27 (citations and footnotes omitted).[17]  Plaintiff has not alleged sufficient facts to establish a plausible alter ego claim against ECAir.[18]

Many courts have applied the *Bancec* presumption and principles to resolve alter ego allegations about foreign governments' instrumentalities █████████████████████████ ██████  For example, in *EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78 (2d Cir. 2013) ("*EM II*"), the Second Circuit reversed the district court's denial of a motion to dismiss a judgment creditor's claim that the state-owned national bank of Argentina was the alter ego of the Republic of Argentina.  *Id.* at 95-96.  The Second Circuit ordered the district court to dismiss the complaint with prejudice.  *Id.* at 99.

As the Second Circuit explained in *EM II*, Argentina's national bank, █████████████ was established by statute, was wholly state-owned, was run by a board of directors appointed by the President, and could purchase and sell property after specific government approval.  800 F.3d at 92.  The Second Circuit rejected as immaterial that, ████████████████████████ the government could remove the entity's officers and directors at will:  "The hiring and firing of board members or officers is an exercise of power incidental to ownership, and ownership of an instrumentality by the parent state is not synonymous with control over the instrumentality's day-to-day operations."  *Id.* at 92-93.  The court also found no legal relevance in the extensive

---

[17]  *See also id.* at 634 ("Today the Court correctly rejects the contention that American courts should readily 'pierce the corporate veils' of separate juridical entities established by foreign governments to perform governmental functions.") (Stevens, J. concurring).

[18]  In *Bancec*, the Cuban government had dissolved the corporate defendant and appropriated all of its assets.  462 U.S. at 631-32.  In this situation, the Cuban government was found liable for the bank's unpaid obligations.  *Id.*  No comparable situation is alleged here.

coordination of economically significant activities between the government and the bank,

concluding that involving the bank's counsel and board in decisions removed any alter ego

implications.  *Id.* at 94; ████████████████████████████████████████

████████████████████

The Second Circuit in *EM II* found that plaintiffs had not pleaded sufficient facts to state

a claim that Argentina "used BCRA to frustrate the collection efforts of its creditors, or that

Argentina treated BCRA as a 'sham' to hide its own assets."  800 F.3d at 96.  *EM II* is

compelling authority here.  If a foreign state's national bank, subject to close operational and

policy control by the state's appointees and its government, is not plausibly the government's

alter ego as a matter of pleading law under the FSIA, then an alter ego claim attacking the far-

more-attenuated relationship between a state-majority-owned commercial airline and its

government sponsor cannot survive a motion to dismiss.[19]

*Hester v. Federal Republic of Nigeria*, 879 F.2d 170 (5th Cir. 1989), is also on-point.  In

*Hester*, the district court set aside as a matter of law a finding that had held the government of

Nigeria to be the alter ego of NGPC, a state-owned corporation the Nigerian government had

established to promote the development of local agriculture.  *Id.* at 176.  The district court held

that there could be no claim for alter ego even though, ████████████████████████████████

---

[19]  *See also Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C.
Cir. 2000) (Ginsburg, J.) ("A sovereign does not create an agency relationship by owning a
majority of a corporation's stock or by appointing its Board of Directors.  If majority stock
ownership and appointment were sufficient, then the presumption of separateness announced in
*Bancec* would be an illusion."); *compare id.* at 851 (government's appointment of new CEO to
impose government-directed policies is not pertinent for alter ego analysis: "These findings,
however, describe nothing more than the sole shareholder exercising its influence, through the
[state-appointed] Board of Directors to put its chosen manager in charge of a corporation that
was suffering severe operational problems and leaving to him the task of running 'day-to-day'
operations.") *with* FAC at ¶ 100 (Republic of Congo approves appointment of ECAir's CEO).

the government owned all of NGPC's stock, the government "would guarantee all loans procured for external financing" of NGPC's activities, the government provided land and funding to NGPC, and government ministers "exercised general supervisory control over NGPC." *Id.* at 180.

The Fifth Circuit agreed with the district court that these facts "failed to establish that [an alter ego] relationship existed." *Id.* at 181.  "The two factors of 100% ownership and appointment of the Board of Directors cannot by themselves force a court to disregard the separateness of the juridical entities." *Id.*  And, as for the loan guarantees, the court found that "[c]learly these documents do not link Nigeria to the day-to-day operation of NGPC." *Id*. at 180.

██████████████████████████████████████████████████████

██████████████████████████████████████ Indeed, NGPC had all four of the factual characteristics that Plaintiff relies on to allege its alter ego claim against ECAir██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████ The same outcome as in *Hester* should follow here.

Equally instructive, at least two federal circuit courts of appeal have considered and rejected claims that a state-owned airline is the alter ego of the foreign sovereign owning all of the airline's stock.  Relying on *Bancec*, these circuits denied judgment creditors' efforts to execute on a foreign-state-owned airline's aircraft to satisfy a judgment debt incurred by the

foreign state—exactly the fact situation here.[20]   The Court should follow this precedent here.

**2.      This Court Should Also Align With The California District Court's And The French Supreme Court's Persuasive No-Alter Ego Findings**

In the California Action, based on the "extensive" evidence Plaintiff submitted, the California court held that Plaintiff had "failed to show" that "Defendant abused the corporate form or ECAir's corporate status works a fraud."   *California Action* at 6.   Plaintiff has alleged nothing new that raises a doubt about that court's no-alter-ego holding.

This same conclusion was reiterated a few weeks ago by the Cour de Cassation, "the highest French court of ordinary jurisdiction."[21]   In June 2015, three Congolese corporations holding French-domesticated, Congolese court judgments against the Republic issued an extrajudicial attachment seizing an ECAir aircraft on the ground at Paris CDG airport.   *See* Loizon Decl., at ¶ 4.[22]   The three Congolese plaintiffs asserted that the Republic was ECAir's alter ego, enabling them to execute on the aircraft.   *Id.* at ¶ 4; Cour de Cassation Ruling No. 1403 F-D (Dec. 7, 2016) ("French Opinion") at 2-3.

A trial court, the Paris appellate court, and France's highest court all agreed that ECAir is "not the Republic of Congo's alter ego," and reversed the attachment and seizure.   *Id.* at 3;

---

[20] *See Hercaire*, 821 F.2d at 565 ("The district court was in error in holding that Argentina's 100% ownership of Aerolineas' stock was sufficient to overcome the presumption of separate juridical existence."); *De Letelier v. Republic of Chile*, 748 F.2d 790, 793-95 (2d Cir. 1984) (reversing execution order against "foreign state's wholly owned airline": "None of these facts show that Chile ignored LAN's corporate status").

[21] *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 538 n.6 (1991); *see* First Amended Complaint at ¶ 36 ("French Court of Cassation [is] France's highest court in matters of private law").

[22] Mr. Loizon has personal knowledge of this French litigation.   *See* Loizon Decl. at ¶ 3.   A copy of the Court de Cassation opinion in French and a certified English translation is attached to his Declaration as Exhibit A.   The references in this brief are to the English translation.   *See In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 96-101 & n.13 (S.D.N.Y. 2007) (relying on French cases and law through certified translations and French lawyer's declarations).

Loizon Decl. at ¶¶ 5-8.  In reaching that decision, the French courts applied alter ego law that is

functionally identical to the alter ego law applied in Utah's and other U.S. courts.[23]



The French courts rejected an alter ego claim ██████████████████████████████████

██████  The French Supreme Court noted that the Republic: ███████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████  French Opinion at 1-3.  ██████████

█████████████████  the French court assumed that: "the company reports profits that do not

account for the funds advanced to it by the State"; four of ECAir's directors are the Republic's

appointees; ECAir's Chairman is also an advisor to the Republic's President; and the Republic

"made loans and advanced funds that enabled ECAir to purchase aircraft."  *Id.*  Further, the

French court acknowledged that the Republic owns a super-majority of ECAir's stock.  *Id.*[24]

████████████████████████████████████████████████████████████████████

Based on this evidence, France's highest court concluded that "the company's operational

independence is legally established," and that "ECAir is acting pursuant to its own valid

corporate authority and is not the Republic of Congo's alter ego."  French Opinion at 3.

This Court should give persuasive weight to the views of the courts in California and

France who have reviewed Plaintiff's allegations and found they do not state a plausible claim of

---

[23] *Compare* Loizon Decl. at ¶ 7 (subsidiary corporation is the alter ego of foreign State under French law when "(i) the State operates de facto day-to-day control of the subsidiary corporation, and (ii) the subsidiary has no financial independence from the State") *with Jones & Trevor Marketing, Inc. v. Lowry*, 2012 UT 39, ¶ 14, 284 P.3d 630 (2012) ("corporate veil may be pierced" if plaintiff proves "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist").

[24] When the Paris aircraft seizure occurred in mid-2015, the Republic owned 70% of ECAir's stock, a controlling interest; ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████

alter ego.  The Court should determine that Plaintiff has not alleged enough pertinent facts to state a legally plausible alter ego claim, sinking all ten alter ego-premised claims.[25]

### C. The Pleaded Facts Also Fail To State A Plausible Alter Ego Claim Under Utah Law

The Supreme Court mandated the application of federal FSIA law to determine an alter ego question involving a foreign sovereign and its instrumentality.  *See Bancec*, 462 U.S. at 623. If, however, this Court should decide to apply Utah's state alter ego law, the result is the same: the First Amended Complaint's factual allegations fail to state a plausible claim for relief. Indeed, because the Supreme Court applied "the principles . . . common to both international law and federal common law" for corporations, *id.* at 622-23, Utah alter ego law is instructive.

In *Jones & Trevor*, the Utah Supreme Court summarized the test for a finding of alter ego liability.  The "corporate veil may be pierced" only when the plaintiff proves (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist," ("the formalities requirement") and also (2) "the observance of the corporate form would sanction a fraud, promote injustice, or an inequitable result would follow" ("the fairness requirement").  2012 UT 39, at ¶ 14.

The Utah Supreme Court reiterated that "courts must balance piercing and insulating

---

[25]  This result also follows by analogy from the Tenth Circuit's application of the Eleventh Amendment's "arm-of-the-state" analysis—the domestic analog to immunity for foreign state entities under *Bancec* and the FSIA—to determine whether a commercial entity wholly-owned by the State of Utah is immune under the False Claims Act.  *See United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 717-21 (10th Cir. 2006).

Associated Regional and University Pathologists ("ARUP") operates "as a commercial laboratory."  *Id.* at 719.  Utah incorporated ARUP and owns all of its stock.  *Id.* at 719-20.  It finances ARUP's facilities partly by direct cash infusions and partly through State-backed loans. *Id*. at 720.  Utah designates the chair of ARUP's corporate board.  *Id.*  At Utah's direction, ARUP rents space to other State entities at below commercial rates.  *Id.*  Despite this evidence, the Tenth Circuit was "convinced that ARUP was designed to operate as a commercial enterprise, not as the alter ego of the State of Utah."  *Id.* at 721.

policies and will only reluctantly and cautiously pierce the corporate veil." *Id*.  "It is only in

'extreme circumstances' that 'the corporate form will be disregarded and the personal assets of a

controlling shareholder or shareholders may be attached in order to satisfy the debts and

liabilities of the corporation.'"  *Albright*, 504 F. Supp. 2d at 1209 (quoting *NLRB v. Greater*

*Kansas City Roofing*, 2 F.3d 1047, 1051 (10th Cir. 1993)).

Many Utah and Tenth Circuit cases have rejected alter ego claims in situations similar to

(and often much more serious than) what Plaintiff has alleged here against ECAir.  For example,

Plaintiff alleges that ███████████████████████  But "[m]ajority stock ownership

and control of the board is not a basis for piercing the corporate veil as a matter of law."[26]

Plaintiff also alleges that ███████████████████████████  That

fact has no legal significance for an alter ego claim:  "The Supreme Court has provided it is

'entirely appropriate and expected for ████████████████████████

███████████[27]

The First Amended Complaint alleges that ████████████████████,

---

[26]  *Albright,* 504 F. Supp. 2d at 1210*; see Lodges at Bear Hollow Condominium Association, Inc.*
*v. Bear Hollow Restoration, LLC*, 2015 UT App 6, ¶ 25, 344 P.3d 145, 152 (no alter ego claim
when parent owns "a majority interest" in subsidiary); *Lowell*, 878 F.2d at 1263 ("The fact that
Pioneer owns all the stock of Uruvan, standing alone, is an insufficient basis to depart from the
general rule that the corporation and its shareholder are to be treated as distinct legal persons.");
*id.* at 1264 ("Exercise of some degree of supervision by a 100% shareholder is not sufficient to
render the subsidiary its instrumentality or alter ego.") (quoting *United States v. Elgin, Joliet &*
*Eastern Railway*, 298 U.S. 492, 503 (1936)).

[27]  *Lowell*, 878 F.2d at 1263 (quoting *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)); *see*
*also id.* ("Pioneer and Uruvan share common officers and directors. . . .  The identity of officers
and directors is insufficient to allow corporate veil piercing."); *Luckett v. Bethlehem Steel*, 618
F.2d 1373, 1379 (10th Cir. 1980) (no valid alter claim when parent corporation "furnished ten of
the managing officers of the [wholly-owned subsidiary], many of whom held managerial posts in
the parent"); *Bear Hollow*, 2015 UT App 6, at ¶ 25 (no alter ego claim when parent "served as
manager" of subsidiary).

███████████████████████████████████████████████████████

████████████████████████████   Utah law views such evidence as *not* indicative of an alter ego

relationship.  In *Jones & Trevor*, two individuals, Lowry and Kinsella, owned all of the stock of

Financial Development Services, took out significant FDS corporate funds for hunting vacations

and other personal uses, refused to pay corporate bills, and then dissolved their by-then-insolvent

company when sued for breach of contract.  *See* 2012 UT, ¶¶ 4-6, 32.  The trial court dismissed

the alter ego claims against Lowry and Kinsella, and both the Utah Court of Appeals and the

Supreme Court affirmed.  *Id.* at ¶¶ 7, 27, 35.  The Supreme Court held that "[a] mere showing

that corporate shareholders took money from a company is insufficient" to show alter ego.  *Id.* at

¶ 27.  The Court found that the withdrawals were accounted for in the corporation's records,

indicating the payments were consistent with corporate formalities.  *Id.* at ¶¶ 27-28, 32-34.

    If, as a matter of Utah law, documented systematic *withdrawals* of company cash for

*non*-corporate, personal uses that rendered the company insolvent are not sufficient evidence of

alter ego, then surely ███████████████████████████████████

███████████████████████████████████████████████

cannot be a plausible indicator of alter ego.  And other Utah courts have so held.[28]

    Plaintiff also alleges that ████████████████████████████████

███████████████████████████   In *Bear Hollow*, the Utah Court of Appeals affirmed

dismissal of alter ego claims even though the parent's principals had ██████████████

████████████████████████████   *See Bear Hollow*, 2015 UT App 6, ¶¶ 18, 27.

---

[28]  *See Lowell,* 878 F.2d at 1263 ("Pioneer will not be exposed to liability for the obligations of
Uruvan when Pioneer contributes funds to Uruvan for the purpose of assisting Uruvan in meeting
its financial obligations and not for the purpose of perpetuating a fraud."); *Bear Hollow*, 2015
UT App 6, ¶¶ 17-18, 22-23 (no basis for alter ego claim of undercapitalization even if subsidiary
is insolvent and its continued operations are funded by parent).

Indeed, federal and state appellate courts in Utah have held that much *more* intrusive financial interactions between parent and subsidiary entities do *not* raise alter ego concerns.  For example, in *D'Elia v. Rice Development, Inc.*, 2006 UT App 416, 147 P.3d 515 (2006), the court affirmed the rejection of an alter ego claim against the sole shareholder and only director and officer of a dissolved Utah company, over whose "finances and business affairs" the shareholder "exercised exclusive control and direction."  *Id.* at ¶¶ 1, 34.  The shareholder took personal fees, a large personal loan, and a salary from the company that, alone, exceeded all of the corporate losses.  *Id.* at ¶ 14.  The shareholder also transferred funds back and forth as "intercompany loans" between this and other companies he controlled, invariably without documentation.  *Id.* at ¶ 17.  The Utah Court of Appeals exonerated the shareholder of any alter ego liability that might attribute the defunct entity's debt to him personally.  *Id.* at ¶¶ 32-34.[29]

Plaintiff's allegations against ECAir pale in comparison to the fact situations in these cases, all of which resulted in findings of no alter ego.  Under any law, Plaintiff has not alleged facts that could state a plausible alter ego claim.



D. **▉▉▉▉▉▉▉▉ Even If True, Is Consistent With Non-Alter Ego Conduct; But If The Court Determines Otherwise, It May Consider External Evidence Proving ▉▉▉▉ ▉▉▉▉▉▉▉ And Then Dismiss The First Amended Complaint**

Plaintiff makes the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

---

[29] And in *Lowell*, the parent paid off its wholly-owned subsidiary's loan for its mill-site.  *See* 878 F.2d at 1264 ("Even if we consider these transactions prove commingling of assets, this factor alone is an insufficient basis to impose liability on [the parent corporations].").  In *Luckett,* the Tenth Circuit affirmed a district court's dismissal, as a matter of law, of an alter ego claim even though the parent corporation owned a super-majority of the subsidiary corporation's stock, provided most of the managerial officers who worked concurrently for the parent and the subsidiary, and delivered technical services and equipment to the subsidiary under a "sweetheart" contract.  *See* 618 F.2d at 1379.

*See* FAC at ¶¶ 83, 86, 107.  The Court can treat this allegation as true, and still conclude that

Plaintiff has not stated a plausible alter ego claim.  *See* pages 14-15 *infra*.  If, however, the Court

should conclude that this allegation, alone, is sufficient to raise an alter ego question, the Court

should consider the external evidence "blatantly contradicting" the allegation.[30]

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

Most glaringly, ████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

---

[30]  "The district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *County of Santa Fe v. Public Service Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir. 2002) (affirming dismissal based on external evidence); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of a document are alleged in a complaint . . . ."); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (dismissal required "[w]hen two parties tell two different stories, one of which is blatantly contradicted by record" and one party's "version is so utterly discredited by the record that no reasonable jury could have believed him.").

[31] *See* ██████████████████████████████████████████████████

███████████████████████████████ *see also*
*Amidax Trading Group v. SWIFT SCRL*, 671 F.3d 140, 142 (2d Cir. 2011) (describing Swift system); *Human Rights in China v. Bank of China*, 2003 WL 22170648 at *2-7 (S.D.N.Y. Sept. 18, 2003) (FSIA immunity not abrogated by Swift-based transfers into U.S.).



Plaintiff had these documents (and more), and knew these facts, before it commenced this action.  Rather than plead what it knows are the real facts, Plaintiff chose, instead, to allege an untruth ███████████████████████████████ and ignore the many dispositive documents "blatantly contradicting" the misstatement.  This Court should dismiss the First Amended Complaint to the extent it relies on the provably-mistaken Singh email.

### E. The Aircraft And Its Trust Are Immune From Execution Under The FSIA Because The Aircraft Is Not "Being Used For A Commercial Activity In The United States"

Even if Plaintiff could plausibly plead that the Republic is ECAir's alter ego, the Court should still dismiss the First Amended Complaint because the Aircraft and its Trust are immune under the FSIA from attachment or execution by Plaintiff.  When, as here, a valid foreign sovereign immunity defense applies, the Court should dismiss the complaint pursuant to Federal

Rule of Civil Procedure 12(b)(1).[32]

## 1.   The Aircraft's Inactive Status Immunizes It And The Trust From Execution

Under the FSIA, "the property in the United States of a foreign state shall be immune from attachment, arrest, and execution except as provided in sections 1610 and 1611 of this chapter."  28 U.S.C. § 1609.  Sections 1610(a) immunizes a foreign state's property *unless* the asset is "being used for a commercial activity in the United States."

In the California Action, the court held that, because the Aircraft "is not being used and is simply being stored" in Victorville, it is not "being used for a commercial activity."  *California Action* at 9.  "Thus, it appears that the aircraft is immune from execution at least based on the record presently before the Court."  *Id.*  The First Amended Complaint confirms the Aircraft is still stored, unused in Victorville.  *See* FAC at ¶¶ 21, 57 ("the Aircraft is currently stored at a facility in Victorville, California").  And the Aircraft will remain in this inactive, unused state until it is moved to another facility "for the purpose of completing build out of the Aircraft for commercial service later."  *Id.*

The California court found *Colella v. Republic of Argentina*, 2017 WL 1545204 (N.D. Cal. May 29, 2007), to be persuasive authority on this issue.  *See California Action* at 8-9.  In *Colella*, a foreign-state-owned aircraft was "in San Francisco for maintenance and other servicing."  2007 WL 1545204 at *1.  Judgment creditors of the foreign state sought a writ of execution on the aircraft.  *Id.*  The district court held that the aircraft was not being used for a commercial activity, and so was immune from execution.  *Id.* at *5-6.  The *Colella* court held:

---

[32]  *See Kirkham v. Société Air France*, 429 F.3d 288, 291 (D.C. Cir. 2005) ("parties seeking FSIA immunity do so through Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction"); *Walters v. Industrial and Community Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011) (court must resolve FSIA immunity issue even if not raised by party that is not a foreign sovereign or instrumentality).

"Service and maintenance do not convert the plane into an implement used in commerce . . . ." *Id.* at *6.

The Aircraft's current inactive status is even further removed from "being used for a commercial activity" than was the *Colella* aircraft as it underwent active maintenance and service.  This Court should hold, as did the California court, that the Aircraft is not now "being used for a commercial activity in the United States," rendering it immune, as a matter of law, from attachment or execution.  And because the Aircraft is the Trust's sole substantial asset, the Aircraft's immunity extends to the Trust itself.[33]

### 2.    Plaintiff Cannot Plead Around FSIA Immunity

Plaintiff attempts to plead around this FSIA immunity in two ways.  Neither has merit.

First, the First Amended Complaint ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ No case supports that proposition.

The federal circuits and district courts uniformly construe Section 1610(a) to require that, to be "used for a commercial activity," the asset must itself be "put into action, put into service, or employed *for* a commercial activity," and not merely used "*in connection*" with a commercial activity or *in relation* to a commercial activity."[34]  Moreover, the asset to-be-executed-on in the United States must also be used for a commercial activity "at the time the writ of attachment or

---

[33] *See Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 202-04 (2d Cir. 2016) (judgment creditor cannot execute on stock assets of foreign-state-owned trust because the companies whose stock is held by trust are not themselves engaged in a commercial activity in the United States); *Aurelius Capital Partners, L.P. v. Republic of Argentina*, 2010 WL 2925072 at *3-4 (S.D.N.Y. July 23, 2010) (denying attachment order on bonds held by foreign-state-owned trust because bonds are not being used for a commercial activity in United States).

[34] *Af-Cap Inc. v. Chevron Overseas (Congo) Ltd.,* 475 F.3d 1080, 1091 (9th Cir. 2007) (emphases in original).

execution issued." *Aurelius Capital Partners, L.P. v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009).  An asset which "*will* be used" or "*could potentially* be used" for a commercial activity is immune from execution under Section 1610(a).  *Id.* (emphases in original).[35]

The maintenance work on the aircraft in San Francisco in *Colella* required the hiring of staff, the purchase of supplies and parts, and the payment of the bill, but this attendant commercial activity did not constitute the kind of immunity-waiving "commercial activity" required under the statute.  That is similarly true for the collection and payment of oil royalties through the U.S.-based bank accounts in *Af-Cap* and *Connecticut Bank*, the cruise fee payments that collateralized the unpaid Ex-Im Bank loans in the *Grenada* case, the launch-pad preparations and related payment activity surrounding the satellite launch contracts in the *Space Exploration* and *Spaceport* cases, and the movement of Argentine pension fund assets in and out of the New York bank accounts in *Aurelius* and *EM*.  *See* n.34 *supra*.  None of these activities abrogated the statutory immunity because commercial "activities" incidental to the asset have no effect on the asset's immunity from execution.  What matters for FSIA purposes is only that the Aircraft is, right now, unused in a storage facility, not that it was once paid for and collateralized.

Second, Plaintiff alleges that ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

---

[35]  *See also Export-Import Bank for the Republic of China v. Grenada*, 768 F.3d 75, 89-90 (2d Cir. 2014) (deposited cruise ship fees are not being used for a commercial activity); *Connecticut Bank of Commerce v. Republic of the Congo*, 309 F.3d 240, 251 (5th Cir. 2002) (oil extraction royalties owed by U.S. company are not being used for a commercial activity); *EM*, 473 F.3d at 486 (bank deposit funds "were never an attachable asset of the Republic" because they were not being used for a commercial activity); *NML Capital, Ltd. v. Space Exploration Technologies Corp.*, 2015 WL 1334291 at * 7 (C.D. Cal. Mar. 6, 2015) (contractual right to launch slot is not an asset being used for commercial activity); *NML Capital, Ltd. v. Spaceport Systems International, L.P.*, 788 F. Supp. 2d 1111, 1124 (C.D. Cal. 2011) (state-owned satellite waiting for launch is not being used for commercial activity).

 *See* FAC at ¶¶ 109-10.  Again, the law is to the contrary.

*See* FAC at ¶ 79. [36]

For the alternative reason that the Aircraft is immune from execution under the FSIA, the Court should grant this motion and dismiss the First Amended Complaint.

### F. The Aircraft Is Not Executable As The Product Of "Fraudulent Transfers"

Plaintiff's tenth claim alleges the Trust's ownership of the Aircraft is the product of "fraudulent transfers," and that gives Plaintiff the right to seize and sell the Aircraft.  In the last words of its final numbered allegation, Plaintiff argues this claim applies "even if the Court otherwise determines that Congo and ECAir are not alter egos of one another."  FAC at ¶ 180.  That is wrong for at least four reasons.

First, Plaintiff has not alleged any fraudulent transfer that went to, or benefited, the Bank of Utah.  No allegedly fraudulent transfer occurred in the United States (much less in Utah).  *See* FAC ¶ 176.  Plaintiff does not allege that anything associated with the Trust's operation, such as the transfer of the Aircraft's title from Boeing to the Trust administered by the Bank of Utah was fraudulent.  No plausible fraudulent transfer claim can be pleaded against Bank of Utah.

Second, because  any liability for the transfers, even if they may have been technically "fraudulent," is immunized under the FSIA.  *See Frank v. Commonwealth of Antigua*

---

[36]  *See Walters,* 651 F.3d at 295 (waiver of FSIA immunity for some activities is not waiver of immunity from execution on all property); *Af-Cap,* 475 F.3d at 1087 (contractual immunity waiver inapplicable if asset is not being used in commercial activity under FSIA).

*and Barbuda*, 842 F.3d 362, 369-70 (5th Cir. 2016) (foreign government is immune from liability to U.S. investors for fraudulent transfers and losses from Ponzi scheme run through non-U.S. bank accounts).

Third, Plaintiff has not plausibly alleged any of the "badges of fraud" indicative of the "actual intent" it must prove, by clear and convincing evidence, to establish fraudulent transfers by the Republic to ECAir. *See Territorial Savings & Loan v. Baird*, 781 P.2d 452, 462 (Utah App. 1989). Plaintiff does not allege that Bank of Utah has acted in bad faith as Owner Trustee. Nor do any of the eleven statutorily-numerated "badges of fraud" apply here: (a) ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

████████     *See* Utah Code Ann. § 26-6-5(2)(a)-(k).

Fourth, there is no dispute that Boeing ████████████████████

████████ bringing the claim squarely within the protections of Utah Code Ann. § 25-6-9 ("transfer or obligation is not voidable . . . against a person who took in good faith and for a reasonably equivalent value"). ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████     *See* Point A *supra*████████████████

████████████ is a good faith, non-voidable transfer.  *See Jones v. Mackey Price Thompson & Ostler*, 2015 UT 60, ¶¶ 73, 76, 355 P.3d 1000 (rejecting fraudulent transfer claim).

### G. Demands For Remedies Are Not Causes Of Action And Should Be Dismissed

Plaintiff's seventh, eighth, and ninth claims for "constructive trust," "resulting trust," and "injunction" are demands for remedies, not "independent causes of action," and should each be dismissed because they fail to state a claim.[37]  Similarly, Plaintiff has styled its second, fifth, and eight claims as claims for "declaratory" relief, which is also not a substantive cause of action.[38]  The Court should dismiss all of these claims as inappropriately pleaded.

### H. Plaintiff Lacks Standing To Allege Unjust Enrichment Based On The Republic's Investment Of Congo Taxpayers' Funds In ECAir

To the extent that Plaintiff's sixth claim for unjust enrichment rests on anything other than the Republic being ECAir's alter ego, the claim cannot pass pleading muster because it seeks to recover based ████████████████████████████

---

[37] Constructive trust: *see Yavuz v. 61 MM, Ltd.,* 576 F.3d 1166, 1176 (10th Cir. 2009) (constructive trust claim "conflates a potential remedy with the substantive cause of action"); *Howell Petroleum Corp. v. Samson Res. Co.,* 903 F.2d 778, 780 (10th Cir.1990) ("A constructive trust is a remedial device used by courts to enforce substantive rights, it is not itself a substantive right."); *Gulf States Steel, Inc. v. Lipton*, 765 F.Supp. 696, 704 (N.D. Ala. 1990) ("[T]he court's research reveals no case in any jurisdiction [holding] that a constructive trust constitutes a cause of action." Resulting trust: *see In re McCauley*, 549 B.R. 400, 411 (Bankr. D. Utah 2016) ("Resulting trusts and constructive trusts are both equitable remedies that arise by operation of law . . . ."). Injunction: *see Romstad v. City of Colorado Springs,* 650 Fed. Appx. 576, 585 (10th Cir. 2016) ("An injunction is not an independent cause of action; it is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed."); *Capener v. Napolitano,* 2012 WL 1952199 at *2 (D. Utah May 30, 2012) ("[I]njunctions are forms of relief, not independent causes of action.").

[38] *Hodge v. Ocwen Loan Servicing*, 2012 WL 1434887 at *6 (D. Utah Apr. 25, 2012) ("[R]equests for declaratory or injunctive relief are actually remedies for other alleged causes of action and do not qualify as causes of action on their own.  Thus, the seventh cause of action is not a legitimate cause of action, but rather a remedy that is provided for separately pleaded claims. Therefore, the seventh cause of action fails." (citation and footnote omitted)).

███████   This wholly extraterritorial claim belongs in a court in Congo, if anywhere, and to the Republic's taxpayers, if anyone.

The claim alleges that "Defendant ECAir received a benefit from Congo in the form of millions of dollars in loans . . . that were used to purchase the Aircraft."  FAC at ¶ 145. According to the First Amended Complaint, "[i]t would be inequitable for ECAir to retain the benefits it received . . . ."  *Id*. at ¶ 147.  The victims of ECAir's allegedly unjust enrichment, and the real parties in interest on the claim, are the people who provided the Republic's allegedly misspent funds, not one of the infinite numbers of people and entities to whom the Republic *might* have instead given the money it invested in ECAir.  Only the Republic's taxpayers have standing to make such a claim.  Plaintiff has no standing to demand that ECAir turn over to Plaintiff the asset ECAir bought with the Republic's money spent in Congo.  *Id*. at ¶ 148.[39]

## CONCLUSION

For any or all of the reasons set forth above, the Court should grant the motion and dismiss the Complaint.

Dated:  January 11, 2017                CLYDE SNOW & SESSIONS, P.C.

                                          */s/ Aaron D. Lebenta*
                                          Aaron D. Lebenta
                                          *Attorneys for Defendant*
                                          BANK OF UTAH, in its capacity as Owner
                                          Trustee of the N887BA Trust

---

[39] "A well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others. In other words, a plaintiff's standing is contingent upon the entitlement to enforce an asserted right."  *RMA Ventures California v. SunAmerica Life Insurance Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009) (dismissing complaint). *See also Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (presumption that extraterritorial acts are not subject to litigation in U.S. courts).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 25th day of January, 2017, I caused a true and correct copy of the foregoing **BANK OF UTAH'S MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) AND 12(b)(1) <u>AND</u> MEMORANDUM IN SUPPORT OF MOTION \*REDACTED-NONCONFIDENTIAL\*** to be filed via the Court's ECF system, which in turn sent copies to counsel of record in accordance with the Court's protocols.

/s/ Jessica Ritchie
Jessica Ritchie

{01102258-1}